Thank you. The next case is 22-1133 N. Re. Evenflo. Attorney Selbin, could you please introduce yourself to the court? Yeah, hi, good morning. Jonathan Selbin on behalf of Plaintiff's Appellants. Thank you, counsel. Attorney Smith, please. Smith on behalf of Evenflo. Thank you. Attorney Smith, please mute your audio and video at this time. The next case is N. Re. Evenflo. Attorney Selbin, please introduce yourself for the record and proceed with your argument. Thank you. Good morning, Your Honors. Jonathan Selbin, Leif Cabrazer, Hyman & Bernstein on behalf of Plaintiff's Appellants. I'd like to reserve three minutes for rebuttal, if I could. Yes, you may. Thank you, Your Honor. Your Honor, this is not a case about buyer's remorse. It's not a case about some amorphous injury or maybe some future personal injury that may or may not ever come to fruition from an allegedly unsafe or defective product. What it is is a case about seller deceit. It's about a company that made two very specific, material, affirmative, false misrepresentations at the point of sale that caused consumers to choose to buy its product, a product they would not have bought at all or for which they would have paid less, had Evenflo not made those material misrepresentations. There were two material misrepresentations. The first was that the Evenflo Big Kid Booster seats had been rigorously side-tested beyond government standards, simulating the energy and the severe five-star government side impact tests. They had not. The second was that they were safe for use with children as light as 30 pounds. They were not. We know those representations were material. Claims about safety are presumptively material. We cited the Fanning v. FTC case on that. And while NHTSA allows manufacturers to make additional statements beyond those that it also prohibits them from making statements that are confusing or misleading as these were, and that's 49 CFR section 571.213 S. 5.5. So while we will have to ultimately prove the merits of our claims, at the pleading stage, our allegations are enough for Article III standing. Why is that? Overpayment claims based on point-of-sale false promises are Hornbook state consumer protection and warranty law claims and have been recognized for centuries as satisfying Article III. Let me break it down. As you know, we have to assess Article III standing as to each individual claim that is made. So let's take your monetary damages for misrepresentation. There is a lot of law supporting your position. The district court thought, though, that the pleading requirements for Article III required you to show something more than that. And the district judge, I think, had two bases. One, she said, you didn't actually plead that there were other products out there. You didn't plead, other than the conclusion that you might have bought something else, that there were products out there that you could have bought instead. And then she also ruled that you didn't say you were injured and you just agreed that's not part of your case. And therefore, you got the value of what you paid for, whether there were misrepresentations or not. So can you tell us why both of those are wrong? And then I'd like to move on to the warranty claims and then I'd like to move beyond that to your claims for injunctive relief. Yes, I can do that. Let me start with the notion that we did not plead that there were other products out there. We plead that we were led, induced to purchase this product by specific false representations. That's enough to state an overpayment claim. I would point the court to the Katz decision from this court that says that. I would point this court to the Karen decision that I know Your Honor and Judge Selya are familiar with. There's a footnote there that distinguishes affirmative misrepresentations that you rely on. That's an injury for Article III purposes. So I would start there. I would also note that in the Narantan case, that the issue came up of whether there were other drugs out there that were available that were as effective or as inexpensive. And the court expressly said that that didn't matter. You and even the fact that doctors might have prescribed more expensive drugs didn't undermine the damages claim there. So I would point to that. I think the same was also true at least implicitly in the Gustafson case. In Gustafson, I believe all of the manufacturers or at least a substantial number of them were doing the same thing. They were all being sued and so there was no obvious alternative product. I would note that in Gustafson, the deceit wasn't even an affirmative misrepresentation. The deceit was the shape of the product and whether it was causing economic injury. I think we very cleanly fall on the line of cases that are affirmative misrepresentation cases at the point of sale and so I don't think we have an obligation to plead any other product. Now, could we plead more about what our plaintiffs did or didn't do or their alternatives? I guess that's conceivable, but for purposes of Article III standing, I don't think it's necessary. Turning to the injury as overpayment, whether we pled injury. Your Honor said that I acknowledge that we don't have an injury. No one suffered property damage. I understand the point, which is what is our injury at that point? Our injury at that point is what it's been for 200 plus years, which is that you told me I was getting one thing and you provided me something else. It's the Rolex example, I think, from the Shawless case from this court. You told me it was a Rolex and it wasn't a Rolex and I bought it. Well, I still got a watch. It just wasn't a Rolex and I paid for a Rolex. It's the gold ring case that the Fifth Circuit talked about. Let's turn to the warranty claims because I have to tell you it's quite unclear to me why, if there is no claim of a tort type injury and the products have been safely used, why not you have standing to assert a breach of warranty? There are a couple of states that maybe fall out of the general category, but let's talk about the general category. I do think it's important to distinguish the claims and I think it's important to look at the nature of the injury alleged and that's what this court said in Gustafson. We often think of warranty claims as a product failing, but warranty claims are also about affirmations of fact that induce purchase. The notion that you are not aware of any case that says this simply because you didn't have a failure of the product, I just don't think that's the law and again, I'm not aware of a case that says that. Yes, there are warranty claims that arise from failed products, but it's a benefit of the bargain claim and it's woven into the contract claim. I understand the argument, but what's your case law to support it? Your Honor, I'm not sure I have offhand a site for that and I'll try to have that for you on rebuttal, but I'm not sure a case that says otherwise. I know, for example, that in the McManus versus Fleetwood case, that was a warranty claim. That's the Fifth Circuit. That's the case where they represented that the product could tow, that the RVs could tow 2,500 pounds, but they actually couldn't safely break 2,500 pounds and the court walks through an analysis of the different claims and holds that you don't have a fraud claim under Texas law. You don't have a whole host of other claims, but you do have an implied warranty claim because the assumption is that a product that can tow that amount can safely stop it as well, but I'll try have for you on my rebuttal a couple of other case sites on that, but I'm simply not aware of cases holding otherwise. Again, we often think of warranty claims as simply about failed products, but I don't think that's all it's about. I think the UCC is very clear that affirmations of fact can give rise to a claim if they turn out to be false. Okay, so you're not quite saying it's a I don't think it's a warranty of merchantability. What's it a warranty of? I think they made an affirmative fact to induce a purchase. They made a statement of affirmative fact to induce a purchase, and that resulted in people entering into the bargain, and those necessarily get woven into the bargain under the UCC as I understand it, and so it's essentially a fraudulent inducement claim under the UCC, but we call that warranty because it's under the UCC. Okay, move on. Overpayment injury has already occurred and has to have for you to have suffered monetary damages, so why do you have Article 3 standing for injunctive relief? It's a fair question, Your Honor, and again, it's appropriate to distinguish between them. Our notion on the injunctive relief claim was to require them to recall the product or to make accurate statements about the product or not misleading statements about the product. I do think that with respect to any plaintiff who is not intending to purchase again from Evenflo, there could be a standing issue with respect to injunctive relief, so I do think it's a different analysis, and to be forthright, I think it's a tougher road to hoe for us on appeal. I think that the standing on the economic harm is quite clear. There is no allegation that any plaintiff is intending to purchase again. That's correct. There is no allegation that any plaintiff is intending to purchase. That can't support injunctive relief because there's no such allegation. That's correct. Now, whether on a remand we could allege that one or more of these plaintiffs does so intend, I can't tell you that as we sit here today, but again, I acknowledge that the injunctive standing is a more difficult one for us. Thank you for your candor. We'll hear from your opponent. Ms. Smith. Good morning, Your Honor. May it please the Court, Barbara Smith, for Evenflo. To answer the question whether plaintiffs in this case sufficiently pled facts to plausibly allege economic harm, this Court need look no further than its own recent precedent on standing, and if it chooses to do so, recent precedent from other circuits as well. There are cases that directly address this very question. In the context of an allegation of economic harm, what type of factual support is required to establish constitutional standing? In Gustafson, the plaintiffs explained that the eyedrops they purchased were sold by volume, and the way the product was designed necessarily caused them to waste that volume to the tune of $500 to $1,000 a year. There is no similar allegation in this complaint to establish the diminution in value for the Evenflo product that the plaintiffs purchased. I'm sorry. I'm not following the logic of your argument. I do know you cite Gustafson and Karen in your briefs. To my mind, they rather support standing here and not the other way around. Why isn't this just a garden of variety? We wouldn't have bought the product, or we would have bought another product, or we would have deferred and continued to use the old product into the future, so we've suffered monetary damages. Why doesn't that just take care of Article 3 standing on at the pleading stage? Because even at the pleading stage, you're required to allege facts to support that conclusory allegation that you were harmed. So, for example, by analogy, in the Talco... Well, they say they wouldn't have bought it. That they relied on the misrepresentations, and if the misrepresentations had not been made, it would have been a different matter, but they relied on the misrepresentations, and that induced the purchase. Isn't that just a classic economic injury-type argument? I don't... And, you know, under Iqbal, it's a low burden. You just have to make a plausible allegation. It doesn't mean they win the case. It just means they've suffered sufficient injury for the case to go forward. Well, when the basis of the economic harm alleged is a benefit of the bargain theory, as it is here, you're required to allege facts to show this is the price I paid for it, and this is the value that it's actually worth. In other words, what's the delta? What's the band of that bargain? What is the benefit that you lost? There are no facts in this complaint establishing that delta, just like there are absolutely no facts explaining what a safer available alternative would be or what a less expensive product would be. In fact, the facts actually alleged in the complaint support that the Evenflo product is the less expensive product. And what about the fact that the allegation that they already had car seats and would not have replaced them at that point? Let's go back to your premise that they have to allege facts to support that delta. I was always under the impression that on damages allegations in a complaint, that a plaintiff didn't have to plead facts to quantify the amount of damages. It's the injury that they failed to plead here. For example, they've said we wouldn't have bought the product. That's the conclusory statement of what the injury is. There are no facts to support that conclusory statement. In the O'Neill case in the Eighth Circuit, very similar allegations to the ones here. There's a product aimed at children that's fundamentally unsafe. There it was a drop side crib. I purchased a drop side crib. I didn't get the benefit of my bargain. And the Eighth Circuit said, very clearly, that's not enough to establish injury for purposes of Article 3. So too in the talcum powder case in the Third Circuit, where the plaintiffs allege, I purchased talcum powder. I am now at an increased risk of harm of experiencing cancer in the future. And they sought economic damages for the benefit of the bargain for the purchase of that product. And the Third Circuit said, that's not enough. You have to have facts to support that. That's fine. Other circuits can take whatever view they want to. You were in the First Circuit. You've now had three judges say, what's wrong with their claim that they wouldn't have bought the product, or they wouldn't have bought it then. They might have continued to use the car seat. And your response was, they have to plead more specific facts to support the damages claim. And Judge Celia just told you, that is not our law. So let's go back to why it is inherently implausible. When an allegation is made, you've misrepresented on the basis of that two misrepresentations. I bought something. And the misrepresentations are material. They go to the heart of why I'm buying the product. To keep my kids safe in a car. I can't think of a higher degree of materiality than that. Why isn't that enough to just meet the plausibility standard as to the economic damages under Article 3? And to rely on cases from this circuit alone, you can resolve that question in our favor if you look at Gustafson, if you look at Conagra, and if you look at Fruit Juice. In the Gustafson case, as I explained, there were specific allegations of the amount of the harm. That is what established standing in that case. In the Conagra case, there were specific facts in the complaint about the premium consumers paid for non-genetically modified oil. There are no facts in this complaint to establish any premium that a consumer would have paid based on the allegedly fraudulent statements here. So it's not a matter of not enough statements or not precise enough statements in this case. It's a matter of no factual statements to support the allegations of harm. And that's what I think. Do you want to move on to the warranty question? I think the warranty question is wrapped up in the same economic harm analysis that we've been talking about already. I'll point out there were express warranty claims in the O'Neill case, for example. Those were dismissed on the same basis that there were no facts of alleged harm in that case. Excuse me, but aren't you arguing against your self-interest? If one were to think there was Article 3 standing for the economic injury, why, from your point of view, would you want to argue that the warranty claims are inherently interrelated and the same? I would have thought your warranty claim, you want to that the court needs to look at each claim individually and each plaintiff individually at this stage of the litigation. I also agree with my friend on the other side and the thrust of your questions from earlier, Judge Lynch and Judge Selya, that there is absolutely no basis for the injunctive relief claim here. So I think that's the easiest win for us. And I would like to spend at least a moment talking about why there should be no ability to amend with respect to that And, you know, I know you have a script and you have all these things you need to cover, but let's go back to warranty, because I think there's a very serious issue as to whether they're standing on the warranty claims. And your brother says, well, it's not really the standard warranty of merchantability. The UCC goes beyond that. And if you make certain representations that the warranty claim includes, warranty claims can be based on a misrepresentation theory. Kate, could you address that, please? Yes, this product was as a booster seat. No children in this complaint were injured by that use. There's no for a warrant here. And I think, again, the burden is on the plaintiffs to point to the paragraphs in their complaint that support that they were harmed for each of the claims they allege. So the fact that my friend on the other side has yet to mention a single actual paragraph in his complaint. Pardon me, but I think you're missing the point. Your brother says there is case law out there saying in addition to the warranty of merchantability, you have warranties that rely, that derive from the type of representation made. And if there is a misrepresentation there, you can assert a warranty claim based on the misrepresentation. Could you address that point? And if you have case law that supports your, I assume, position that there is no such type warranty claim under the UCC in the majority of the jurisdictions that the plaintiffs have brought claims under. Five minutes. Oh, what's the case law? So respectfully, Your Honor, and I don't mean to not be answering your question, but you have to establish constitutional injury for each of the claims alleged in the complaint. And I don't think any creative suggestion by counsel at oral argument today that there must be a case law out there to support the warranty argument is enough. We have to look at what the facts actually alleged are. And with respect to this case, they're threefold. They wouldn't have purchased, they would have paid less, or there's a safer available alternative on the market. None of those are supported by facts, and none of those are anything other than conclusory. So with respect to the economic damages claim, and with respect to the warranty claim, and absolutely, absolutely, a fortiori with respect to the threat of injunctive relief, they're simply not deficiencies in the particular type of warranty claim that he now says he's asserting. That's right, Your Honor. To the extent they're, you know, altering their approach to rely on a warranty claim they haven't articulated and pressed below, you know, I think we would rely on our briefs to establish why they haven't pledged. Okay, so we sort of have a sense that the warranty of merchantability may well not work here. In the district court, did the argument, was the argument made by plaintiffs that, no, there's a different type of warranty that is based on misrepresentation? Not to my knowledge, although I'd of course defer to counsel for plaintiffs to point out where that is in the record, if it exists. Okay, so you would say it's not in the complaint, it was not argued to the district court, and so it's waived. And, yes, Your Honor, and part of the problem here is their theme, their theory of harm has evolved as this case has evolved. So the way they're arguing now, the way they're in their reply, it might not be unusual. I do have a very straightforward and simple question. Have you established constitutional outchanging courses? So to the extent they can't squarely answer the question why they have standing for each of the claims they've alleged, I think that's just sort of reflective of the fact that they acknowledge their, you know, their standing arguments are particularly weak as it relates to some of their claims in particular. And I do want to take a moment to talk about the leave to amend point, given what, you know, I understand the court's grappling with the various claims here and likely will need to consider whether leave to amend should be granted. On remand, if it doesn't affirm straight out on appeal, which I encourage the court to do, I think there's binding precedent from this court in the Hoach and Donner case, in the Fisher case, and in the Gray case that make clear that if you don't actually move to amend before the trial court, absent extraordinary circumstances, you're not entitled to amend because you lose on appeal. So just because there's a passing request in opposition to a motion to dismiss, that's not considered a motion for leave to amend. And if you don't make a motion for leave to amend, then it's not error for the district court not to not to grant it. So I don't think any amendment should be allowed if the court decides to reverse even in part in this case. Thank you. Thank you, counsel. Attorney Sullivan, you have three minutes for rebuttal. Yeah, thank you. And thank you, Your Honor. I want to address the warranty piece. Just by way of one example, paragraph 785 of the complaint states that prior to their purchase, Minnesota plaintiffs in the Minnesota subclass, we pled it separately by state, could not have discovered that the Big Kid booster seats were not fit for the ordinary purpose and did not conform to the affirmations and promises previously represented. That is both an implied warranty claim and a UCC 2313 claim, basis of the bargain. So we state that, and I don't have all the complaint sites, but I'm pointing you to 785 because that's the one I was able to grab quickly. We do in fact allege those claims. I don't think it came up below in the briefing or argument, but we do specifically allege both types of claims. Both are recognized, and in terms of case law, I previously cited your court on the implied warranty claim to the McManus case. I would also point you to the Whirlpool case, which was the same kind of claim in the Whirlpool case. And the reason these products aren't fit for their ordinary purpose is because they're not safe. And either we're right about that or we're wrong about that. And that's a claim that accrues at the point of sale. We don't have to wait and see for that claim. And I would again point you to the McManus case where the court said it doesn't matter that anybody had an accident as a result of this. It doesn't matter that you even tried to tow with your vehicle. You were told that it was going to have this ability to safely tow 2,500 pounds, and that was an implied warranty that it was fit to stop 2,500 pounds. So I recognize that's the Fifth Circuit, but you did ask for some cases, and that's a Fifth Circuit case and a Sixth Circuit case that are directly on point. I just have a couple of other quick points. My colleague cites to Gustafson and says, they put forward studies in support of their claim. Well, they had to do that there because it wasn't an obviously material claim. It's pretty self-evident that the safety of a child seat is material. It's also presumptively material under the Fanning case. It's also expressly called out by NHTSA when it says you can say whatever you want to say about these, but you can't mislead or confuse with your statements. So in Gustafson, they had a somewhat novel theory. It was deceit by product design. That's not our claim. We have affirmative misrepresentations here, and when you have affirmative misrepresentations, you don't need an economic study to prove, at least at the pleading stage, and probably not even at trial under Neurontin and average wholesale price. You don't need an economic study to prove it. The same is true for ConAgra. They also cited a study about people being confused about the meaning of natural and whether or not people cared about genetically modified. Just to finish the thought, we don't need that here because, again, we've got a material fact that's being affirmatively misrepresented, and I'll end there. Okay. Thank you very much.